LAW OFFICES OF TIMOTHY L. MCCANDLESS
Timothy L. McCandless, Esq., SBN 147715
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624

Telephone: (925) 957-9797 / (949) 388-7779
Facsimile: (925) 957-9799
E-mail: legal@prodefenders.com
legalsync@gmail.com

*Attorneys for Plaintiff(s)*: Custodio P. Gutierrez; Artemia O. Gutierrez

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

CUSTODIO P. GUTIERREZ; ARTEMIA O. GUTIERREZ,

Plaintiff(s),

VS.

WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WACHOVIA MOMORTGAGE, FSB, FORMERLY KNOW AS WORLD SAVINGS BANK, FSB; RTS PACIFIC, INC.; and DOES 1 through 50, Inclusive,

Defendant(s).

Case No.: 3:15-CV-02984-EMC

**FIRST AMENDED COMPLAINT FOR:**

1. ELDER ABUSE;
2. BREACH OF SECURITY INSTRUMENT;
3. ~~WRONGFUL FORECLOSURE, VIOLATION OF CALIFORNIA CIVIL CODE § 2924 ET SEQ.~~;
4. LACK OF STANDING UNDER CALIFORNIA CIVIL CODE § 2924(a)(6);
5. ~~VIOLATION OF CALIFORNIA CIVIL CODE § 2924.10~~;
6. VIOLATION OF CALIFORNIA CIVIL CODE § 2924.17;
7. ~~VIOLATION OF CALIFORNIA CIVIL CODE § 2923.6~~;
8. ~~VIOLATION OF CALIFORNIA CIVIL CODE § 2923.7~~;
9. VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200 ET SEQ.;
10. ~~INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS~~;
11. SLANDER OF TITLE;
12. QUIET TITLE.

**[JURY TRIAL DEMANDED]**

Complaint Filed: May 20, 2015
Removed: June 15, 2015
Trial Date: Not Assigned

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

## I.

## INTRODUCTION

1. Plaintiffs, CUSTODIO P. GUTIERREZ and ARTEMIA O. GUTIERREZ bring this action against Defendants, and challenges the legality of what transpired between the Plaintiffs and their *Original Lender and Loan Servicer* WORLD SAVINGS BANK, FSB (“WORLD SAVINGS”)[1]; *Assigned Loan Servicers*, WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WACHOVIA MOMORTGAGE, FSB, FORMERLY KNOW AS WORLD SAVINGS BANK, FSB; *Purported Foreclosing Trustee* RTS PACIFIC, INC., handling of the Plaintiffs’ loan/mortgage file.

2. This action arises of out the current economic crisis that has hit the nation and continues to destroy homeowners’ ability to maintain their properties. The failure and unraveling of the real estate market has caused a rush of foreclosures on properties all over the country by banks and mortgage servicing companies, such as Defendants. As the foreclosure crisis continues, it has become clear that in their efforts to foreclose on as many properties as quickly as possible lenders and servicers have been taking action outside the law. The extent of the crisis and the clear need for action has once more been highlighted by the recent national mortgage settlement.

3. This case is yet another example of those in the mortgage and foreclosure industry engaging in wrongful, illegal, and permanently damaging activities against homeowners.

## II.

## JURISDICTION

4. The transactions and events which are the subject matter of this complaint all

[1] Plaintiffs are informed and believe that GOLDEN WEST FINANCIAL was the second largest savings and loan corporation in the United States, with operating branches under the name of WORLD SAVINGS BANK, FSB (“WORLD SAVINGS”), and it was purchased by WACHOVIA MORTGAGE CORPORATION (“WACHOVIA”) on/or about May 7, 2006. WACHOVIA exposed to risky loans, such as adjustable rate mortgages acquired during the GOLDEN WEST FINANCIAL acquisition, began to experience heavy losses in its loan portfolios during the subprime mortgage crisis. On/or about December 31, 2008 the purchase of WACHOVIA by WELLS FARGO BANK, NA (“WELLS FARGO”) was finalized. For purposes of this Complaint, then all references to WORLD SAVINGS shall be deemed to refer to the acts and omissions of WELLS FARGO that occurred prior to the date it was acquired by WELLS FARGO on/or about December 31, 2008.

occurred within the County of Contra Costa, State of California.

5. The property is located at 5171 HEAVENLY RIDGE LANE, RICHMOND, CALIFORNIA 94803, in the County of Contra costa, California.

6. This Court has personal jurisdiction over the parties as all Defendants engage in a business within the State of California and Contra Costa County.

7. Defendants, and each of them, regularly engage in business in the State of California, County of Contra Costa and regularly provide mortgage loans and related services to residents in the State of California, County of Contra Costa who wish to obtain a mortgage loan, and who contact or are contacted by a loan officer for assistance in obtaining the necessary financing.

**III.**

**THE SUBJECT PROPERTY**

8. The subject property is a single-family residence, owned by Plaintiffs CUSTODIO P. GUTIERREZ and ARTEMIA O. GUTIERREZ, which is located at 5171 HEAVENLY RIDGE LANE, RICHMOND, CALIFORNIA 94803. All that certain real property situate in the City of Richmond, County of Contra Costa, State of California, described as follows:

> LOT 15, AS SHOWN ON THE MAP OF SUBDIVISION 4833, FILED MAY 31, 1978 IN MAP BOOK 211, PAGE 25, CONTRA COSTA COUNTY RECORDS.
>
> EXCEPTING THEREFROM:
>
> RIGHTS RESERVED IN THE FOLLOWING DEED AS APPLICABLE:
>
> 1. RIGHTS RESERVED IN THE DEEDS FROM VIGLET BLYMAIR, ET AL, RECORDED AUGUST 17, 1977, BOOK 8467, PAGE 617, OFFICIAL RECORDS, AND BOOK 8467, PAGE 621, OFFICIAL RECORDS, AS FOLLOWS:
>
> "RESERVING UNTO FORREST J. SIMONI AND DORIS J. SIMONI, HIS WIFE, IVAN T. GOYAK AND MARY GOYAK, HIS WIFE WITHOUT WARRANTY ANY EXIST, FIFTY PERCENT (50%) OF ANY AND ALL MINERAL RIGHTS, REVERSIONARY INTEREST IN MINERAL RIGHTS AND RIGHTS TO LATTER REVESTING OF MINERAL RIGHTS, IN AND TO THE ABOVE DESCRIBED PROPERTY, SAVE AND EXPCEPTING SUCH RESERVED RIGHTS AS LIE WITHIN 500 FEET OF THE SURFACE OF THE LAND AS GRADED TO ACCOMMODATE TO DEVELOPMENT OF SAID LAND."

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

2. RIGHTS RESERVED IN THE DEED FROM FORREST J. SIMONI, ET AL, RECORDED MAY 21, 1978, BOOK 8859, PAGE 678, OFFICIAL RECORDS AS FOLLOWS:

"RESERVING UNTO FORREST J. SIMONI AND DORIS J. SIMONI, HIS WIFE, IVAN T. GOYAK AND MARY GOYAK, HIS WIFE, ELVO TRAVALINI AND MAURINE TRAVALINI, HIS WIFE, JULE F. BLYMEIR AND VICLET BLYMAIR, HIS WIFE, WITHOUT WARRANTY THAT MAY EXIST, 50 PERCENT OF ANY AND ALL MINERAL RIGHTS, REVERSIONARY INTEREST IN MINERAL RIGHTS AND RIGHTS TO LATTER REVESTING OF MINERAL RIGHTS, IN AND TO THE ABOVE DESCRIBED PROPERTY, SAVE AND EXCEPTING SUCH RESERVED RIGHTS AS LIE WITHIN 500 FEET OF THE SURFACE OF THE LAND AS GRADED TO ACCOMMODATE THE DEVELOPMNET OF SAID LAND."

APN: 433-331-015-1 (hereinafter referred to as "Subject Property" and/or "the Property").

**IV.**

**PARTIES**

9. CUSTODIO P. GUTIERREZ and ARTEMIA O. GUTIERREZ (hereinafter referred to as "Plaintiffs") at all times relevant have been residents of the County of Contra Costa, State of California and are the owners of Real Property, including but not limited to the property at issue herein, the Subject Property.

10. Defendant, WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WACHOVIA MOMORTGAGE, FSB, FORMERLY KNOW AS WORLD SAVINGS BANK, FSB, (hereinafter referred to as "WELLS FARGO") is a national banking association, with its principal place of business in Sioux Falls, South Dakota, and was at all times herein mentioned, engaged in business as a bank and/or servicer of mortgage loans in the County of Contra Costa, State of California, including Plaintiff's loan file, Note and DOT.

11. Defendant, RTS PACIFIC, INC., (hereinafter referred to as "RTS PACIFIC") is a Washington corporation, with its principle place of business in Seattle, Washington, on information and belief and at all times mentioned in this Complaint was engaged in the business of title insurance, banking services, including foreclosure, and acting as trustee for banks, mortgage holders and lien holders in the county of Contra Costa, California.

12. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names and

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

all persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the property described in this complaint adverse to Plaintiffs' title, or any cloud on Plaintiffs' title thereto. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

13. The true names and capacities of Defendants listed herein as DOES 1 through 50 are unknown to Plaintiffs who therefore sue these Defendants by such fictitious names. Each of the DOE Defendants was the agent of each of the other Defendants herein, named or unnamed, and thereby participated in all of the wrongdoing set forth herein. On information and belief, each such Defendant is responsible for the acts, events and concealment set forth herein and is sued for that reason. Upon learning the true names and capacities of the DOE Defendants, Plaintiffs may amend this Complaint accordingly.

14. Plaintiffs are informed and believe, and thereon allege, that: (1) Defendants are liable for all wrongful acts of the companies which WELLS FARGO acquired prior to the date thereof as the successor-in-interest to those companies; (2) WELLS FARGO directly and through its subsidiaries and other agents sued herein as DOES have continued the unlawful practices of the acquired companies since the dates of their acquisition, including, without limitation thereof, writing fraudulent mortgages as set forth above and concealing wrongful acts that occurred in whole or in part prior thereto, and (3) WELLS FARGO and its subsidiaries are jointly and severally liable as alter egos and as a single, greater unified whole.

15. WELLS FARGO's public disclosures, as reflected in its filings with the SEC, make clear that WELLS FARGO considers itself both a common enterprise operating as a greater whole and without meaningful distinctions as to its operating units. WELLS FARGO holds itself out to the public as the successor to AMERICA'S SERVICING COMPANY, WACHOVIA, WORLD SAVINGS, GOLDEN WEST and its subsidiaries. As noted in 2010 Annual Repo (Wells Fargo 10-K):

> On December 31, 2008, we acquired Wachovia Corporation (Wachovia) in a transaction valued at $12.5 billion to Wachovia common stockholders. Wachovia, based in Charlotte, North Carolina, was one of the nation's largest diversified financial services companies, providing a broad range of retail banking, asset and wealth management, and corporate and investment banking products and services

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

> to customers through 3,300 financial centers in 21 states from Connecticut to Florida and west to Texas and California. It also provided nationwide retail brokerage, mortgage lending and auto finance businesses.

16. On February 28, 2007, WACHOVIA filed its annual report on Form 10-K for the fiscal year ending December 31, 2006 ("WACHOVIA 2006 10-K"). The WACHOVIA 209610-K stated: "on October 1, 2006, Wachovia completed the acquisition of Golden West Financial Corporation, the parent company of World Savings Bank." GOLDEN WEST shareholders received 1.051 shares of WACHOVIA plus $18.6461 in cash for each GOLDEN WEST share. The total cost of acquisition was $24.3 billion. The Company reported revenues for the year of $29 .95 billion, compared with revenues of $26.11 billion for fiscal year 2005. Diluted earnings per share for the year were $4.63, an 11 % increase over diluted earnings per share for the previous year. The 2006 10-K was the first annual or quarterly report by WACHOVIA following the October 2006 acquisition of GOLDEN WEST.

**V.**

**COMMON FACTS**

17. The common facts herein include those facts set forth above in this Complaint.

18. Among other improper behavior alleged herein, Defendants misled Plaintiffs by falsely representing that WACHOVIA and WORLD SAVINGS had strict and selective underwriting and loan origination practices and a conservative lending approach that set it apart from other lenders. Such reassurances were repeated by Defendants throughout the years from at least 2003 through 2008 in order to artificially support WACHOVIA's stock price in the midst of a weakening mortgage market.

19. In 2006, WACHOVIA acquired GOLDEN WEST, an Oakland, California- based mortgage lender owned and run notoriously by Herbert and Marion Sandler, for more than $24 billion. GOLDEN WEST's main mortgage product, the Pick-A-Payment ("Pick-A-Pay") mortgage, allowed borrowers to choose from multiple payment options each month. The options were: (1) full payment of interest and principal sufficient to pay down the loan in a traditional 30 year term; (2) a higher payment that would pay off the loan in 15 years; (3) an interest-only payment; or (4) a minimum payment that did not cover all the necessary interest, with the unpaid

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

interest added to the loan balance.

20. Under the fourth option, the Pick-A-Pay mortgage resulted in "negative amortization," meaning that over time the outstanding balance can grow.

21. One of the chief characteristics of the GOLD WEST ARM devices was the low teaser rate that ratcheted sharply upward as interest rates increased. These programs were marketed to unsophisticated home buyers who didn't understand the great financial risk they faced as they tried to outrun the cascade of falling values and rising monthly payments. These loans were labeled "the Typhoid Mary of the mortgage industry" by the *New York Times.* The Sandlers have been included in a list of "25 people to blame for the financial crisis" by *Time Magazine. USA Today* described the Sandlers as "ruthless home lenders who helped destroy Wachovia Corp. and contributed to the financial decay that led to the U.S. government's $700 billion rescue plan to buy rotten mortgages."

22. WACHOVIA did not merely seek to integrate GOLDEN WEST's operations into its business. Instead, as noted by *Business Week*, and as confirmed by former employees whom the Plaintiffs have interviewed, "right after Wachovia bought Golden West, executives from [Golden West] took control of all mortgage lending at Wachovia." WACHOVIA's mortgage portfolio was dominated by Pick-A-Pay mortgages: by the end of 2007, WACHOVIA held $120 billion of Pick-A-Pay mortgages and $50 billion of "traditional mortgages" (WACHOVIA's own phrasing). Moreover, 58% of the $120 billion Pick-A-Pay mortgage portfolio consisted of loans used to purchase properties in California; a further 10% were loans used to purchase properties in Florida.

23. Between 2003 and 2009, Defendants touted GOLDEN WEST's "conservative underwriting standards" and the "superior credit quality of its mortgage portfolio." WACHOVIA claimed to have implemented policies that made certain that borrowers could pay their loan obligations. As subprime loan defaults accelerated in early 2007, Defendants claimed that WACHOVIA "actively managed [its] business to minimize its exposure to the subprime loan market" to the point where WACHOVAI did not "anticipate any meaningful potential impact to earnings with the subprime going forward."

24. As a result of the 125% cap for negative amortization at which point the loans were

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

then recast, Defendants' Pick-A-Pay loans, effectively destroyed and used up every last bit of equity in the Plaintiffs' property. When these Pick-A-Pay loans were reset prematurely due to the contractual breaches by WELLS FARGO described herein, homeowners, including the Plaintiffs, had no way out of these horrible loans except through foreclosure. The sooner that these mortgages were foreclosed by Defendants, the sooner that Defendants could add these properties to the growing inventory of Real Estate Owned ("REO") properties.

25. Upon information and belief, when WELLS FARGO acquired WACHOVIA, it took a large "paper loss" on their non-performing loans or mortgages, so that whatever money or benefits they later obtained on these defaulted mortgages, would then be reflected as additional and new profits, like "icing on the cake," and contributed to the "turnaround" in WELLS FARGO's balance sheet and profits including a special dividend for the quarter. The CEO of WELLS FARGO was one of the primary beneficiaries of this fiscal rosiness due to his being one of WELLS FARGO's largest individual shareholder at that time.

26. Plaintiffs were indispensable pawns, "financially unsophisticated", in Defendants' pervasive misconduct in the markets. Plaintiffs trusted Defendants. Plaintiffs believed the public statements of Defendants about the soundness of their underwriting standards. Plaintiffs relied upon those statements and would have acted differently had they known the truth known exclusively by Defendants. Plaintiffs, in the formation of their contractual relationship with Defendants would have acted differently had Defendants informed Plaintiffs that Defendants had abrogated their traditional sound underwriting standards and instead knew they were creating a super-heated price bubble they knew would burst, eviscerating the value of Plaintiffs' home.

27. Without limiting the foregoing, if they had known the truth, Plaintiffs would have sold their homes to avoid the precipitous decline in value that followed, rather than enter into expensive refinancing relationships.

28. If they knew the truth, Plaintiffs would have refused expensive adjustable rate mortgage that would surely force them into liquidation upon reset or handcuffed by prepayment penalties. Plaintiffs would not have accepted l 00% loan to inflated-valuation stated-income loan knowing that they were destined to be perpetually underwater once Defendants' fraud on the

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

public markets unraveled.

**VI.**

**ENFORCEMENT ACTION TAKEN AGAINST DEFENDANTS**

29. Some of Defendants have already been investigated and sued by various governmental agencies and private parties for wrongdoing similar to the wrongful acts alleged in this Complaint.

30. WELLS FARGO's 2010 annual report 10-K cites ongoing actions and pending investigations:

> **MORTGAGE FORECLOSURE DOCUMENT LITIGATION** Seven purported class actions and several individual borrower actions related to foreclosure document practices were filed in late 2010 and in early 2011 against Wells Fargo Bank, N.A. in its status as mortgage servicer. The cases have been brought in state and federal courts. Of the individual borrower cases, the majority are filed in state courts in California and Ohio. Two other class actions were filed against Wells Fargo Bank, but Wells Fargo is named as a defendant as corporate trustee of the mortgage trust and not as a mortgage servicer. The actions generally claim that Wells Fargo submitted "fraudulent" or "untruthful" affidavits or other foreclosure documents to courts to support foreclosures filed in the state. Specifically, plaintiffs allege that Wells Fargo signers did not have personal knowledge of the facts alleged in the documents and did not verify the information in the documents ultimately filed with courts to foreclose. Plaintiffs attempt to state legal claims ranging from wrongful foreclosure to deceptive practices to fraud and seek relief ranging from cancellation of notes and mortgages to money damages
>
> **MORTGAGE RELATED REGULATORY INVESTIGATIONS** Several government agencies are conducting investigations or examinations of various mortgage related practices of Wells Fargo Bank. The investigations relate to two main topics, (1) whether Wells Fargo may have violated fair lending or other laws and regulations relating to mortgage origination practices; and (2) whether Wells Fargo's practices and procedures relating to mortgage foreclosure affidavits and documents relating to the chain of title to notes and mortgage documents are adequate. With regard to the investigations into foreclosure practices, it is likely that one or more of the government agencies will initiate some type of enforcement action against Wells Fargo, which may include civil money penalties. Wells Fargo continues to provide information requested by the various agencies.

31. On December 21, 2010, WELLS FARGO settled a lawsuit with the Attorney General of the State of California over predatory lending violations stemming from WORLD SAVINGS and WACHOVIA's "Pick-A-Pay" loan product. The bank agreed to $2 billion of loan modifications. This settlement followed Pick-A-Pay settlements WELLS FARGO entered into with attorney generals in Arizona, Colorado, Florida, Illinois, Nevada, New Jersey, Texas and

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

Washington.

32. In early 2011, WELLS FARGO agreed to make $600 million of loan modifications and fund $50 million settlement fund to end a lawsuit against WACHOVIA mortgage unit WORLD SAVINGS that alleged misleading practices regarding the bank's adjustable-rate mortgages.

33. Also on April 13, 2011, Defendant WELLS FARGO entered into a Consent Cease and Desist Order with the Office of Comptroller of the Currency ("OCC Order"). The OCC Order recites that an examination of WELLS FARGO undertaken by the Board of Governors of the Federal Reserve System, FDIC, OCC, OTS and Federal Reserve found "unsafe or unsound practices" with respect to the manner in which the Bank handled various foreclosure and related activities, including that Defendant WELLS FARGO:

> filed or caused to be filed in state and federal courts numerous affidavits executed by its employees or employees of third-party service providers making various assertions, such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records ...

34. Article VII of the OCC Order requires a plan, acceptable to the OCC to "remediate all financial injury to borrowers caused by any errors, misrepresentations, or other deficiencies identified" in the required action plan.

35. Pursuant to Article IV of the OCC Order entitled Compliance Program, WELLS FARGO agreed to immediately correct its procedures, including specific remediations that speak directly to the issues herein, including:

> (b) processes to ensure that all factual assertions made in pleadings, declarations, affidavits, or other sworn statements filed by or on behalf of [Wells Fargo] are accurate, complete, and reliable; and that affidavits and declarations are based on personal knowledge or a review of the [Wells Fargo]'s books and records when the affidavit or declaration so states;
>
> (e) processes to ensure that [Wells Fargo] has properly documented ownership of the promissory note and mortgage (or deed of trust) under applicable state law, or is otherwise a proper party to the action (as a result of agency or other similar status) at all stages of foreclosure and bankruptcy litigation, including appropriate transfer and delivery of endorsed notes and assigned mortgages or deeds of trust at the formation of a residential mortgage-backed security, and lawful and

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

> verifiable endorsement and successive assignment of the note and mortgage or deed of trust to reflect all changes of ownership;
>
> (i) processes to ensure that [Wells Fargo] has the ability to locate and secure all documents, including the original promissory notes if required, necessary to perform mortgage servicing, foreclosure and Loss Mitigation, or loan modification functions...

36. The OCC also found that WELLS FARGO had "litigated foreclosure proceeding and initiated non-judicial foreclosure proceedings" without properly endorsed or assigned documents or in the "possession of the appropriate party at the appropriate time".

37. Based upon the foregoing, Plaintiffs believe and thereon allege the same facts as set forth in the foregoing Orders, Interagency Review and Federal Reserve investigations and findings, and in the results of other investigations and audits.

## VII.

## GENERAL ALLEGATIONS / STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

38. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

39. On or about May 21, 2007, Plaintiffs executed loan documents apparently prepared by and tendered by WORLD SAVINGS intended to finance loan secured by the Property. Included in the loan documents was only purported application that was neither prepared by Plaintiffs nor was Plaintiffs provided an opportunity to review such applications.

40. WORLD SAVINGS prepared a DOT dated May 21, 2007, (See Exhibit "A" attached hereto and incorporated by reference as though set out fully herein), a true and correct copy of the Deed provided to the Plaintiffs. The DOT identifies WORLD SAVINGS as "Lender," and "Beneficiary" of the DOT and Note, and GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., as "Trustee".

41. Neither, WORLD SAVINGS nor any of their agents or employees explained to the Plaintiffs any of the terms and conditions of the Deed or the Riders, including the Pick-A-Pay plan.

42. Plaintiffs allege that they were not allowed to review the loan documents before

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

they signed them, because WORLD SAVINGS stated that there simply was not enough time for them to review them first.

43. The terms of the finance transaction Plaintiffs entered into with WORLD SAVINGS were not clear or conspicuous, consistent and are illegal, violating several statutes and in essence creating an illegal loan. Further, like other loan of this type, this mortgage was underwritten without proper due diligence by WORLD SAVINGS.

44. Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product provided.

45. Plaintiffs allege that Defendant WORLD SAVINGS had a superior bargaining strength over them, and that they were relegated only the opportunity to adhere to the contract or reject it, that WORLD SAVINGS drafted all of the documents related to the loan, that no negotiations were possible between Plaintiffs and WORLD SAVINGS and that the contract was a contract of adhesion.

46. The purpose of entering into the above-described mortgage loan transactions was for Plaintiffs to eventually own the Property. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged herein.

47. On or about February 2, 2012 due to the economic downfall and its impact on the Plaintiffs, Plaintiffs become incapable of maintaining regular mortgage payments by the terms stated on the Note, and have approached their loan servicer, WELLS FARGO with request to modify their mortgage to reflect current market situation, and were advised that they need to be in default, for WELLS FARGO to help. At that time they spoke with ANDERW WUBBEN

48. Since then Plaintiffs, requested and submitted several loan modifications to Defendant WELLS FARGO, all in anticipation that their loan servicer will help them in saving their Property.

49. Plaintiffs diligently and promptly submitted to Defendants complete loan modification application with the financial documents, including, but not limited to, bank statements, tax returns, income statements, for several times, pursuant to purported statements

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

made by the WELLS FARGO's representatives of not receiving documents, or statements such is "I'm sorry but we lost your documents".

50. Plaintiffs repeatedly, due to their age, requested to have assigned point of contact, but WELLS FARGO, failed to provide contact, and Plaintiffs were constantly transferred from one representatives to another.

51. According to the records of Contra Costa County, on or about September 24, 2014, Defendants recorded Substitution of Trustee, ("SOT"), (See Exhibit "B" attached hereto and incorporated by reference as though set out fully herein).

52. The SOT was executed on or about September 19, 2014 by MELISSA HJORTEN, the *Assistant Vice President* for WELLS FARGO.

53. Thereafter, on or about September 26, 2014, Defendant RTS PACIFIC, the *Substitute Trustee*, recorded Notice of Default and Election to Sell, ("NOD"), (See Exhibit "C" attached hereto and incorporated by reference as though set out fully herein).

54. Plaintiffs' most recent application loan modification submitted on or about August 20, 2014, was denied on or about January 8, 2015, (See Exhibit "D" attached hereto and incorporated by reference as though set out fully herein). Plaintiffs allege, that while they were being reviewed for loan modification alternatives, Defendants recorded NOD in violation of California Civil Code Section 2923.6(c).

55. California Civil Code Section 2923.6(c) provides:

> (c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

56. Here in this instant case, Plaintiffs provided Defendant WELLS FARGO bank with the loan modification application on or about August 20, 2014, and the NOD was recorded on or about September 26, 2014, while Plaintiffs were reviewed for the modification and before

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

the determination of the Plaintiffs' loan modification application, in violation of "DUAL TRACKING".

57. Despite Plaintiffs' efforts, Plaintiffs' loan servicer WELLS FARGO has refused to work in any reasonable way to modify the loan or avoid foreclosure sale.

58. According the Contra Costa County Recorder's Office, Notice of Trustee's Sale, ("NOTS"), (See Exhibit "E" attached hereto and incorporated by reference as though set out fully herein). The sale of the Subject Property is set for June 8, 2015.

59. Plaintiffs allege WELLS FARGO's conduct impeded Plaintiffs' ability to mitigate losses and forced them to exhaust their resources and a possibility of foreclosure. It is unknown whether any review of their loan modification on the merit ever took place as of yet.

60. Plaintiffs allege that Defendants, and each of them, are engaged in and continue to engage in violations of California law including but, not limited to: Business and Professions Code Section 17200 et seq.California Civil Code Sections 2923.5 et seq., 2923.6 et seq., 2924 et seq., and unless restrained will continue to engage in such misconduct, and that a public benefit necessitates that Defendants be restrained from such conduct in the future.

61. It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure. These changes in accessing the State's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided. Those additional foreclosures will further destabilize the housing market with significant, corresponding deleterious effects on the local and state economy.

///

///

///

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

**VIII.**

**FIRST CAUSE OF ACTION**

**ELDER ABUSE**

**CALIFORNIA WELFARE AND INSTITUTIONS CODE §15600 ET SEQ.**

**(As Against WELLS FARGO, and DOES 1 through 50, Inclusive)**

62.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

63.     Plaintiffs, CUSTODIO P. GUTIERREZ and ARTEMIA O. GUTIERREZ were over sixty-six (65) years old at the time the subject loan was extended and accepted, and when the subject loan was review for the loan modification by the Defendants.  As such, in accordance with California Welfare and Institutions Code Section 15610.27, they were senior citizens and are therefore, afforded special protections under the laws of the State of California.

64.     Defendants had exclusive knowledge, not accessible to Plaintiffs, of material facts pertaining to Defendants' mortgage lending activities that it did not disclose to Plaintiffs at the time the were entering into Contracts with Plaintiffs.

65.     By not disclosing the truth of their Pick-A-Pay loans, lax lending standards deficient loan portfolio, shaky secondary market collateralized securities and overall scheme to its borrowers.

66.     Defendants undertook and saddled Plaintiffs with increasing amounts of credit risk, such as (1) reduced and/or no documentation loans; (2) stated income loans; or (3) loans with loan to value or combined loan to value ratios of 95% and higher.  Finally, Defendants did not disclose that their riskiest loan product, the Pick-A-Pay ARM, was falsely classified as a prime loan.

67.     In fact, the Plaintiffs were set up to fail.  Defendants did not utilize quality underwriting processes. Defendants' financial condition was not sound, but was a house of cards ready to collapse, a Defendants well knew, but Plaintiffs did not.

68.     California Welfare and Institutions Code Section 15610.30(a) defines financial abuse as the taking of real or personal property with intent to defraud.  Civil remedies are

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

sometimes available under California Welfare and Institutions Code Section 15657.03.

69. In addition, California Civil Code Section 525 known as the California Consumer Legal Remedies Act, which can be used in conjunction with all other legal remedies, specifies unfair methods of competition and unfair or deceptive acts and practices for the sale of goods or services to consumers, and includes specific enhanced penalties and protections for seniors as indicated in California Civil Code Section 1770(a)(23). California Civil Code Section 3345 also provides for the recovery of treble damages as a result of unfair or deceptive practices against senior citizens.

70. WORLD SAVINGS and Defendants based the subject loan on the Plaintiffs' home equity, as opposed to their ability to repay the loan, in conscious disregard of their duties to Plaintiffs as well as to the American economy in general.

71. WORLD SAVINGS first made the conscious decision to "close the deal" with regard to securing the Property of Plaintiffs by way of a DOT at whatever cost.

72. Once the counted on default occurred, Defendant WELLS FARGO, made the conscious decision to ignore the attempts on the part of Plaintiffs to work out a restructure or modification to the loan. Preventing foreclosure was never their intention; they were counting on the foreclosure. Once default occurred, they were quick to act to initiate foreclosure process on the Property.

73. Defendants' acts were willful, shameless, deliberate, calculated, scheming, intentional, and done with complete and total disregard for the financial and emotional harm that would befall the Plaintiffs, despite their protected status of senior citizens.

74. Plaintiffs have no reason to believe that they would be taken advantage of. Their lives have been turned upside down, in this, what is supposed to be, their golden years.

75. Plaintiffs are entitled to recover punitive and exemplary damages in addition to attorney's fees and costs of their suit incurred as a result of Defendants actions as hereinabove set forth.

///

///

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

**SECOND CAUSE OF ACTION**

**BREACH OF SECURITY INSTRUMENT**

**(As Against All Defendants)**

76. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

77. Plaintiffs allege that on or about, May 21, 2007, they entered into a written contract in the form of a Note and DOT, (See Exhibit "A").

78. This type of loan was known as a "Pick-A-Pay" loan, because borrowers were given several options to choose from in making their monthly mortgage payments. The options generally ranged from a below interest only payment (negative amortization) to an interest plus principal payment. But for the different options offered when the contract was entered into with the Plaintiffs, Plaintiffs either would not have accepted the loan offered, or would have negotiated other terms, gone to a different lender, or paid significantly less money, including any "points" and a lower interest rate. In fact, the flexibility to make significantly lower payments under some of the contractual options, was a primary reason why the Plaintiffs accepted this mortgage, as otherwise they could not have afforded the higher monthly payments offered under the other options.

79. Pursuant to the terms of the mortgage loan offered to the Plaintiffs, WORLD SAVINGS offered four separate "Pick-A-Pay" options to choose from when deciding what amount to pay on a monthly basis. These options were stated to be available until the negatively amortized amount of the loan, together with the principal, reached 125% of the original loan amount.

80. On or about the dates set forth above, Plaintiffs accepted the above offered mortgage loan, including but not limited to by executing and notarizing the mortgage loan agreement, a representative sample of which contract is attached hereto as Exhibit "A," thereby creating a contract with the WORLD SAVINGS (and GOLDEN WEST), which contract was eventually taken over by Defendant WELLS FARGO when it acquired the other Defendants, including the obligations and duties of the original lenders.

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

81.     At a later date, WACHOVIA and WELLS FARGO committed a material breach of the Plaintiffs' contract by, inter alia, failing and refusing to allow the Plaintiffs to pick one of four of the specific payment options which were a material inducement for Plaintiffs to enter into the contract, and which were a material term of the contract. Instead, WACHOVIA and WELLS FARGO notified the Plaintiffs, and made it known publicly, that WACHOVIA and WELLS FARGO would not allow Plaintiffs to exercise at least two of the four payment options. Defendants eliminated these options, which allowed for lower payments by Plaintiffs, even though the negatively amortized amount of the loans had not yet reached 125% of the original loan amount, which threshold was the contractual requirement before any such options for lower payments could be eliminated.

82.     When Plaintiffs selected or tried to select the disallowed payment options under the contract, Defendants breached the contracts by refusing to pennant them to do so.

83.     In fact, these Plaintiffs could only afford to make their mortgage payments by using the disallowed options which required significantly lower mortgage payments than the options which these Defendants did not disallow, which constituted a significant detriment to Plaintiffs and a significant benefit to said Defendants.

84.     Said Defendants contractual breaches caused damages to Plaintiffs as a direct and proximate result of said breaches, including by not limited to:

a)      Taking away Plaintiffs' ability to continue to make minimum payments that included negative-amortization;

b)      Eliminating a contractual and material benefit to Plaintiffs which was an important element in Plaintiffs' decisions to enter into the mortgage contract;

c)      Causing Plaintiffs' properties to enter into the foreclosure process, with the consequent loss of their equity in their property, and substantial additional fees and costs which were added to the mortgage balance which would not otherwise have occurred, and attorneys' fees and costs to Plaintiffs due to the commencement of the foreclosure process;

d)      Causing Plaintiffs to lose the ability to make the necessary payments on their loan

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

by eliminating the options that allowed for lower payments that Plaintiffs could have afforded; and

e) Causing significant damage to Plaintiffs' credit ratings due to their inability to make the higher payments necessitated by said Defendants' breaches, thereby increasing Plaintiffs' costs of borrowings and depriving them of financing alternatives.

85. At the time of said Defendants breaches, Plaintiffs had performed each and every condition required under the mortgage loan agreement, and substantially performed upon all promises except those excused by Defendants' breach.

86. The reduction of payment options caused Plaintiffs loans to become unaffordable and was the proximate cause of their defaults on their mortgage payments, which in turn resulted in Defendants commencing the foreclosure process.

87. This specific material breach of the original mortgage contract has devastated the said Plaintiffs' ability to pay for their mortgage loans.

**~~THIRD CAUSE OF ACTION~~**

**~~WRONGFUL FORECLOSURE PROCESS~~**

**~~VIOLATION OF CALIFORNIA CIVIL CODES §2924 ET SEQ.~~**

**~~(As Against All Defendants)~~**

88. ~~Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.~~

89. ~~California Civil Code Section 2924 mandates that a non-judicial trustee's sale "SHALL NOT TAKE PLACE" unless it is done on behalf of the beneficiary of a DOT securing a Note and certain technical procedures is met. California Civil Code Section 2924 requires strict compliance to foreclose non-judicially and a trustee's sale based on a statutorily deficient NOD is invalid. There is in existence a certain written instrument which purports to be a NOD that is in the possession of Defendants and each of them, (See Exhibit "C").~~

90. ~~Defendants cannot prove that the non-judicial foreclosure process strictly complied with the tenets of California Civil Code Sections 2923.5 and 2924 in order to maintain an action~~

**LAW OFFICES OF TIMOTHY L. MCCANDLESS**
**26875 Calle Hermosa, Suite A**
**Capistrano Beach, California 92624**
**Telephone (925) 957-9797 / (949) 388-7779**
**Facsimile (925) 957-9799**

~~for possession.~~

91. ~~The California Legislature passed Senate Bill 1137 and recently amended to Senate Bill 900, impacting residential mortgage lenders, foreclosure procedures and eviction procedures. This law is effective immediately and extends on to January 1, 2018. The Statute amends provisions of the non-judicial foreclosure procedures found in California Code of Civil Procedure Section 2924, by adding requirements for meetings, due diligence, and notification of counseling. The primary purpose for the Statute is foreclosure procedures and imposes an unprecedented duty upon lenders relating to contact with borrowers.~~

92. ~~California Civil Code Section 2923.5 applies to loans made from January 1, 2003, to December 31, 2007, and loans secured by residential real property that are for owner-occupied residences. For purposes of California Civil Code Section 2923.5, "*owner-occupied*" means that the residence is the principal residence of the borrower. In this instant case the Subject Property is Plaintiff's principal residence.~~

93. ~~Defendant WELLS FARGO violated California Civil Code Section 2923.5 by failing to contact Plaintiffs, in person or by telephone, at least 30 days prior to recording the NOD on September 26, 2014. The statement in the February 15, 2013, Declaration of Compliance, by MICAELA D. HAYES, a WELLS FARGO's *VP of Loan Documentation*, stating that someone contacted the borrower as required under Section 2923.55(b)(2) is false because, Defendant failed to contact the Plaintiffs as required by Section 2923.5.~~

94. ~~Moreover, none of the Foreclosing Defendants explored options with the Plaintiffs to avoid foreclosure. Additionally, Defendants refused Plaintiffs' the right to have a meeting within 14 days when requested by the Plaintiffs. Accordingly, the Foreclosing Defendants did not fulfill their legal obligation to the Plaintiffs.~~

95. ~~Thus, the Foreclosing Defendants engaged in a fraudulent foreclosure of the Subject Property in that the Foreclosing Defendants did not have the legal authority to initiate the foreclose process on the Subject Property and, alternatively, if they had the legal authority, they failed to comply with Civil Code Sections 2923.5 and 2923.6. As a proximate result of the negligent or reckless conduct of the Defendants', Plaintiffs' credit has been impaired and they are~~

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

~~threatened with the imminent loss of their property, despite the fact that they as senior citizens have been victimized by the allegations contained herein.~~

96. ~~Plaintiffs allege wrongful foreclosure by the non-judicial foreclosure process is being conducted because the Defendants alleged to hold a valid power of sale violated various foreclosure procedures of the Senate Bill 1137 Chapter 69 (Filed with the Secretary of State and approved by Governor Arnold Schwarzenegger on July 8, 2008 and passed the Assembly on June 30, 2008 and Senate on July 2, 2008), later amended by the Senate Bill 900 Chapter 87 (Filed with the Secretary of State and approved by Governor Jerry Brown on July 11, 2012 and passed the Assembly on April 26, 2012 and Senate on July 2, 2012).~~

97. ~~Defendant WELLS FARGO's failure to comply with the Notice and Contact requirements of Section 2923.5 renders the NOD and all subsequent proceedings based on said Notice, invalid and void. See *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 236-37 (2010) (NOD which fails to comply with Section 2923.5 is invalid and a non-judicial foreclosure may only proceed if a new, valid NOD is recorded).~~

98. ~~Plaintiffs allege that those Defendants, and each of them, willfully, wrongfully and without justification, and without privilege conducting an invalid foreclosure sale against the Plaintiffs' Subject Property, thereby, slandering Plaintiffs' title thereto.~~

99. ~~Furthermore, the aforementioned acts of Defendants, and each of them, were motivated by oppression, fraud, malice in that Defendants, and each of them, by their respective acts, omissions, nonfeasance, misfeasance and/or malfeasance, conducting an invalid foreclosure sale of the Plaintiffs' Subject Property, in order to deny Plaintiffs of their rights of possession and ownership.~~

100. ~~Based on the discussed-above numerous procedural defects in the ongoing foreclosure proceedings, Plaintiffs respectfully asks this Court to set the defective NOD aside and declare the foreclosure proceeding unlawful.~~

///

///

///

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

**FOURTH CAUSE OF ACTION**

**FOR LACK OF STANDING UNDER CALIFORNIA CIVIL CODE § 2924(a)(6)**

**(As Against All Defendants)**

101. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

102. Under California Civil Code Section 2924(a)(6) "No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest."

103. No records exist in Contra Costa County Recorder's Office that this particular DOT was assigned to Defendant WELLS FARGO, Defendant failed to provide evidence pursuant to Plaintiffs' request, that WELLS FARGO purchased their Note and DOT, when they acquired assets of WACHOVIA.

104. Defendants caused NOD to be recorded and otherwise initiated the foreclosure process despite not being the holder of the beneficial interest under mortgage or DOT, the original trustee or the substituted trustee under DOT, or the designated agent of the holder of the beneficial interest.

105. None of Defendants were acting within the scope of authority designated by the holder of the beneficial interest.

106. As a result of Defendants' conduct a breach of the code section, Plaintiffs have incurred expenses in order to clear title to the Property. In addition Plaintiffs have been forced as a result of Defendants' violations to retain a law firm to enforce their rights, and have incurred and will continue to incur costs and reasonable attorney's fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof. Moreover, these expenses are continuing, and

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

Plaintiffs will incur additional charges for such purpose until the cloud on Plaintiffs' title to the Property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

**~~FIFTH CAUSE OF ACTION~~**

**~~VIOLATION OF CALIFORNIA CIVIL CODE § 2924.10~~**

**~~WRITTEN ACKNOWLEDGMENT OF MODIFICATION APPLICATION~~**

**~~(As Against WELLS FARGO, and DOES 1 through 50, Inclusive)~~**

107. ~~Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.~~

108. ~~California Civil Code Section 2924.10 provides "When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt."~~

109. ~~As alleged herein above, Plaintiffs submitted loan modification applications and requested documents to Defendant WELLS FARGO. Plaintiffs have never received written acknowledgment of the receipt of the loan modification applications nor have they ever received written acknowledgment of documents submitted.~~

110. ~~Defendants failed to comply with California's requirements in dealing with Plaintiffs' loan modification application and by failure to review the application in good faith and failure to provide Plaintiffs with a written acknowledgment of receipt of documents pertaining to their loan modification application.~~

111. ~~Plaintiffs therefore demands civil penalties against Defendants and damages in an amount to be proven at trial.~~

**SIXTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CIVIL CODE § 2924.17**

**(As Against All Defendants)**

112. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

113. Pursuant to Section 2924.17(a), any Declaration recorded pursuant to Section 2923.5 shall be accurate, complete and supported by competent and reliable evidence. Similarly, any notice of default, notice of sale, assignment of deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with foreclosure proceedings subject to Section 2924, should also be accurate, complete and supported by competent and reliable evidence.

114. Section 2924.17(b) of the Homeowner Bill of Rights is intended to force mortgage services to thoroughly review these documents for accuracy before recording them or filing with the Court. Indeed, a mortgage servicer is charged with "ensuring that it has reviewed competent and reliable evidence to substantiate the borrowers' default and the right to foreclose, including the borrowers' loan status and loan information."

115. As alleged herein above, Defendants caused to be recorded a fraudulent NOD, (See Exhibit "C"), they had no authority to record, and therefore, failed to comply with the provisions of California Civil Code Section 2914.17 when they recorded the aforesaid document.

116. As a result of Defendants' conduct a breach of the code section, Plaintiffs have incurred expenses in order to clear title to the Property. In addition Plaintiffs have been forced as a result of Defendants' violations to retain a law firm to enforce their rights, and have incurred and will continue to incur costs and reasonable attorney's fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof. Moreover, these expenses are continuing, and Plaintiffs will incur additional charges for such purpose until the cloud on Plaintiffs' title to the Property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

**~~SEVENTH CAUSE OF ACTION~~**

**~~VIOLATION OF CALIFORNIA CIVIL CODE § 2923.6~~**

**~~DUAL TRACKING~~**

**~~(As Against WELLS FARGO, and DOES 1 through 50, Inclusive)~~**

117. ~~Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein..~~

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

118. ~~California law also forbids the practice of dual tracking: engaging in purportedly good faith negotiations with a homeowner regarding a workout or modification on their home while simultaneously taking the steps necessary to execute a non-judicial foreclosure. That law is codified in California Civil Code Section 2923.6(c).~~

119. ~~Here, Defendant WELLS FARGO, engaged in dual tracking. It strung Plaintiff along and lulled her to sleep with a false sense of hope that a loan modification is under review, while at the same time taking the steps necessary to conduct a non-judicial foreclosure sale and recording NOD while in process of loan modification negotiations with the Plaintiff.~~

120. ~~Defendants recorded NOD, on or about September 26, 2014, (See Exhibit "C"), yet the loan modification denied on or about January 8, 2015, (See Exhibit "D").~~

121. ~~As a consequence of Defendants' practice in this regard, Plaintiffs have suffered and will continue to suffer general and special damages in an amount according to proof as set forth below, and also presents a ripe and justiciable controversy for this Court's immediate equitable adjudication for which money damages would not be appropriate and without which the Plaintiffs will suffer irreparable injury in the loss of their home and their family's resultant homelessness.~~

122. ~~Plaintiffs therefore seek injunctive relief to enjoin Defendants and its agents from foreclosing and later evicting them from their home.~~

123. ~~Plaintiffs also demands civil penalties against Defendants, and demands damages in an amount to be determined at trial.~~

**~~EIGHTH CAUSE OF ACTION~~**

**~~VIOLATION OF CALIFORNIA CIVIL CODE § 2923.7~~**

**~~SINGLE POINT OF CONTACT~~**

**~~(As Against WELLS FARGO, and DOES 1 through 50, Inclusive)~~**

124. ~~Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.~~

125. ~~California law provides that lenders must provide a "single point of contact" for borrowers to discuss their loans. This law was enacted specifically to address the persistent~~

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

~~problem of lenders setting forth a parade of divergent team members in far-flung regions of the country who would shuttle borrowers around the telephone tree looking for answers on their home that would never arrive until the auctioneer had completed the transfer of the property to the lender.~~

126. ~~The new law against this nefarious practice became effective on January 1, 2013. It is codified in California Civil Code Section 2923.7(a).~~

127. ~~Plaintiffs allege although WELLS FARGO accepted Plaintiffs' loan modification application submitted after HBOR was enacted in January 1, 2013, WELLS FARGO has to perform its due diligence and comply with the law.~~

128. ~~Plaintiffs allege Defendant WELLS FARGO had failed to assign to the Plaintiffs a single point of contact. WELLS FARGO's conduct failed the specific requirement of the provision of HBOR because there was no update or communication after Plaintiffs submitted their loan modification application. WELLS FARGO specifically and deliberately provided multiple and divergent points of contact to the Plaintiffs, none of whom could or would give them a straight answer about anything to do with their home.~~

129. ~~Defendants failed to comply with California's requirements in dealing with Plaintiffs' loan modification application and by failure to review the application in good faith and failure to provide Plaintiffs with a single point of contact pertaining to their loan modification application.~~

130. ~~Plaintiffs therefore demand civil penalties against Defendants and damages in an amount to be proven at trial.~~

**NINTH CAUSE OF ACTION**

**VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200**

**(As Against All Defendants)**

131. Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

132. Business & Professions Code Section 17200 et seq., protects California consumers, borrowers and in some cases, businesses from fraud, unfair competition and deceptive business

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

practices. The Act covers dishonest businesses engaged in sham operations to prey upon unsuspecting consumers for illicit profit. Defendants are in the mortgage loan selling, servicing, and originations for the primary and secondary markets.

133. The Act may also cover legitimate companies that innocently misrepresent their products. The Act is broad and is to be liberally construed to accomplish consumer protection.

134. "Unfair competition" is defined in Section 17200 as encompassing any one of the following five types of business "wrongs": (1) an "unlawful" business act or practice; (2) an "unfair" business act or practice; (3) a "fraudulent" business act or practice; (4) " unfair, deceptive, untrue or misleading advertising"; and (5) any act prohibited by Sections 17500- 17577. The definitions in Section 17200 are disjunctive. Each of five "wrongs" operates independently from the others. "[I] n other words, a practice is prohibited as 'unfair' or ['fraudulent'] even if not 'unlawful' and vice versa." A business act or practice is "unlawful" if it violates some other law. Explaining the "unlawful" prohibition under Section 17200, the California Supreme Court held that Section 17200 "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [Section] 17200." "Unlawful" claims under Section 17200 have been predicated on numerous laws and regulations existing at various levels of government, including: federal statutes; federal regulations state statutes; state regulations; local ordinances; prior case law; and standards of professional conduct.

135. All of the violations of law alleged in Historical Allegations and preceding claims will provide the basis for unfair business practices pursuant to Supreme Court authority.

136. Here Plaintiff has suffered damages by having to respond to credit injury, attorney fees, and other damages to be proven at trial.

137. By definition, the Act covers deception, which includes a failure to disclose as well as an affirmative misrepresentation. Plaintiff extensively alleged failures to disclose above.

138. As extensively alleged above, Defendants purposely deceived Plaintiff by not disclosing that the Promissory Note has been presold, by collecting loan payments and unilaterally increasing principal without being legally entitled to do so.

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

139.   Upon information and belief, WORLD SAVINGS, WACHOVIA, GOLD WEST and WELLS FARGO all conspired to defraud, and defrauded Plaintiff, the Court, and the public, by implementing and perpetrating their fraudulent scheme of inducing Plaintiffs to accept mortgage for which they were not qualified based on inflated property valuations and undisclosed disregard of their own underwriting standards and the sale of overpriced collateralized mortgage pools, all the while knowing that the plan would crash and bum, taking the Plaintiffs down and costing them the equity in their home and other damages, violates numerous statutes and common law protections enacted for consumer protection, privacy, trade disclosure, and rair trade and commerce.

140.   Defendants published advertising that false conveyed that Defendants were issuing prime loans, were financially sound and were acting in the best interests of borrowers, when in fact their mortgage program was based upon the creation of product for fraudulent sale in collateralized mortgage pools.

141.   Plaintiffs' credit was severely damaged by the fraudulent acts of Defendants. Plaintiffs have suffered severe, emotional distress, and other damages that will be proven at trial.

142.   Defendants violated other laws as outlined in the Complaint which are "unfair" business practices.

143.   The test that many Courts have used to determine whether a business practice is unfair "involves an examination of [the practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.  In brief, the Court must weigh the utility of the Defendant's conduct against the gravity of the harm to the alleged victim ..." In addition to this test, California Courts have adopted language from Federal Trade Commission ("FTC") guidelines defining "unfair" conduct with reference to Section 5 of the FTC Act. Under this standard, a business act is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

144.   Plaintiff is entitled to damages and an injunction to enjoin further illegal acts.

///

///

## ~~TENTH CAUSE OF ACTION~~

## ~~INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS~~

**~~(As Against All Defendants)~~**

145. ~~Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.~~

146. ~~This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.~~

147. ~~Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiffs, that Defendants were entitled to exercise the power of sale provision contained in the DOT. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.~~

148. ~~Defendants' conduct - fraudulently foreclosing on the property in which they had no right, title, or interest - was so outrageous and extreme that it exceeds all bounds which are usually tolerated in a civilized community.~~

149. ~~Such conduct was undertaken with the specific intent of inflicting emotional distress on the Plaintiffs, such that Plaintiffs would be so emotionally distressed and debilitated that they would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants are attempting to collect, and right to clear title to the Property such that said title will regain its marketability and value.~~

150. ~~At the time, when Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt. Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard of the probability of causing homeowners to suffer severe emotional distress.~~

151. ~~As an actual and proximate cause of Defendants' fraudulently foreclosing on the Plaintiffs' home, the Plaintiffs have suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.~~

**LAW OFFICES OF TIMOTHY L. MCCANDLESS**
**26875 Calle Hermosa, Suite A**
**Capistrano Beach, California 92624**
**Telephone (925) 957-9797 / (949) 388-7779**
**Facsimile (925) 957-9799**

152. ~~Plaintiffs did not default in the manner stated in the NOD, yet because Defendants' outrageous conduct, the Plaintiffs have been living under the constant emotional nightmare of losing the Property.~~

153. ~~As a proximate cause of Defendants' conduct, Plaintiffs have experienced many sleepless nights, severe depression, lack of appetite and loss of productivity.~~

154. ~~The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.~~

**ELEVENTH CAUSE OF ACTION**

**SLANDER OF TITLE**

**(As Against All Defendants)**

155. Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

156. As discussed above, the foreclosure related documents recorded in the County Recorder's Office, cannot lead to a valid foreclosure on behalf of Defendants, because they couldn't acceded to the beneficial interest in Plaintiffs' DOT from WORLD SAVINGS nor is there any other validly recorded document making it the Beneficiary. Thus, the foreclosure related documents were invalid and false. Defendants acted with malice and a reckless disregard for the truth by simply assuming they were the Beneficiaries under Plaintiffs' DOT and causing a false foreclosure related documents to be recorded that cannot lead to a valid foreclosure.

157. Defendants' causing the recordation of the foreclosure related documents, was therefore false, knowingly wrongful, without justification, in violation of statute, unprivileged, and caused doubt to be placed on Plaintiffs' title to the Property. The false recordation of the foregoing documents directly impairs the vendibility of Plaintiffs' Property on the open market in the amount of a sum to be proved at trial.

158. Therefore, Plaintiffs are entitled to recover attorney's fees and costs incurred in cancelling the false and fraudulent instruments which have clouded their title. The exact amount

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

of such damages is not known to Plaintiff at this time, and Plaintiff will move to amend this complaint to state such amount when the same becomes known, or up on proof at the time of trial in this matter which Plaintiff demands on all issues of damages and factual findings issues.

159. "*Preventive relief is granted by injunction, provisional or final*." Civil Code Section 3420. Plaintiffs are entitled to an injunction under Civil Code Section 3420 and for cancellation under Civil Code Section 3412 to remove clouds on their title and to prevent any further slander against their title.

**TWELFTH CAUSE OF ACTION**

**QUIET TITLE**

**(As Against All Defendants)**

160. Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

161. Plaintiffs are the rightful owners in fee of title to property commonly known as 5171 HEAVENLY RIDGE LANE, RICHMOND, CALIFORNIA 94803. The property is legally described in Paragraph "21" herein.

162. Defendants have claimed an interest adverse to Plaintiffs' title in the property. In particular, claim a right to collect payments indicated by the DOT and Note.

163. Plaintiff alleges lack of standing of Defendants in that there is no valid, Defendants could not have directly acceded to the beneficial interest in Plaintiffs' DOT. The public records not reflect that the Subject Property at issue was ever legally conveyed by Defendants. Plaintiffs allege that because the DOT does not contain the Power of Sale clause and if there is Power of Sale clause in the mortgage document, the Defendants must go through the judicial foreclosure process in order to foreclose on the property.

164. Plaintiffs are informed and believe and thereupon allege that Defendants, and each of them, claim an interest in the Subject Property adverse to the Plaintiffs. However, as a result of the conduct more fully described in the preceding allegations, the claim of Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the Property.

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

165. Plaintiffs further allege that, under current case law, they are not required to "tender" any payment prior to asserting any rights or claims as set forth in this complaint.

166. Plaintiffs therefore seek a declaration that the title to the Subject Property is vested in Plaintiffs alone and that Defendants herein, and each of them, be declared to have no estate, right, title or interest in the Subject Property and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the Subject Property adverse to the Plaintiffs.

167. Plaintiffs seek a determination of their fee simple title clear of all encumbrances as of the date of this complaint.

**VIII.**

**DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES**

WHEREFORE, Plaintiffs CUSTODIO P. GUTIERREZ and ARTEMIA O. GUTIERREZ demands a trial by jury. Plaintiffs pray for judgment and order against Defendants as follows:

1) For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;

2) For a temporary restraining order preventing Defendants, or anyone acting in concert with them from causing the Property to be sold, assigned, transferred to a third-party, or taken by anyone or any entity;

3) For a preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them from seeking to evict Plaintiffs and their family until the claims herein are resolved;

4) For compensatory damages in an amount to be determined by proof at trial;

5) For special damages in an amount to be determined by proof at trial;

6) For general damages in an amount to be determined by proof at trial;

7) For statutory damages in an amount to be determined by proof at trial;

8) For punitive damages;

9) For removal of any and all derogatory information reported to any and all credit reporting agencies and/or bureaus relating to the transaction involved herein;

10) For an order stating that Defendants engaged in unfair business practices;

11) For exemplary damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct;

12) For judgment determining that Defendants' claims to Plaintiffs' Property are without any right whatever and such Defendants have no right, title, estate, lien or interest whatever in the above-described Property or any part thereof;

13) For attorney's fees and costs; and

14) Any other further relief this Court deems equitable and proper.

Respectfully submitted,

DATED: September 24, 2015

LAW OFFICES OF TIMOTHY L. MCCANDLESS

/s/ *Timothy L. McCandless*
Timothy L. McCandless, Esq.
*Attorney for Plaintiff(s):*
Custodio P. Gutierrez; Artemia O. Gutierrez

**LAW OFFICES OF TIMOTHY L. MCCANDLESS**
**26875 Calle Hermosa, Suite A**
**Capistrano Beach, California 92624**
**Telephone (925) 957-9797 / (949) 388-7779**
**Facsimile (925) 957-9799**

LAW OFFICES OF TIMOTHY L. MCCANDLESS
26875 Calle Hermosa, Suite A
Capistrano Beach, California 92624
Telephone (925) 957-9797 / (949) 388-7779
Facsimile (925) 957-9799

**VERIFICATION**

I, TIMOTHY L. MCCANDLESS, am an attorney at law admitted to practice before all courts of the State of California and have my office in Orange County, California, and am the attorney for the Plaintiff in this action, that all of the officers of the Plaintiff are unable to make the verification because they are absent from said County and for that reason affiant makes this verification on the Plaintiff's behalf; that I have read the foregoing document and know its contents. I am informed and believe and on that ground allege that matters stated herein are true.

Executed: September 24th, 2015, at Capistrano Beach, California.

I declare under penalty of perjury that under the laws of the State of California that the foregoing is true and correct.

DATED: September 24, 2014

/s/ *Timothy L. McCandless*
Timothy L. McCandless, Esq.